IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID RAPP, | ) |
| | ) CIVIL ACTION |
| Plaintiff, | ) FILE NO._____ |
| | ) |
| vs. | ) |
| | ) **COMPLAINT AND TRIAL BY JURY** |
| #1 A LIFESAFER OF MISSOURI, INC., | ) **DEMAND** |
| | ) |
| Defendant. | ) |

## NATURE OF ACTION

1. Plaintiff David Rapp ("Plaintiff") brings this action against #1 A LifeSafer of Missouri, Inc. (LifeSafer) under the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013 et seq. ("Regulation M").

2. As one district court recognized, "Congress enacted the CLA as an amendment to the [Truth in Lending Act ("TILA")] and [thereby] extended the TILA's 'credit disclosure requirements to consumer leases.'" Clement v. Am. Honda Fin. Corp., 145 F. Supp. 2d 206, 209 (D. Conn. 2001) (*quoting Turner v. Gen. Motors Acceptance Corp*., 180 F.3d 451, 454 (2d Cir. 1999)).

3. The TILA—and, by extension, the CLA—was put in place to protect consumers from obfuscation or misinformation in credit and lease transactions.

4. Congress recognized and sought to remedy the information imbalance in such transactions, particularly for inexperienced or uninformed consumers lacking the financial shrewdness of those companies responsible for extending credit.

5. LifeSafer's lease agreement with Plaintiff is defective: it does not provide the

segregated disclosures required by the CLA and Regulation M in a manner substantially similar to that prescribed by the Board of Governors of the Federal Reserve System ("Board"), which is the government agency charged with oversight of the CLA until the creation of the Consumer Financial Protection Bureau in 2011.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 15 U.S.C. § 1667d(c) and 28 U.S.C. § 1331.

7. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where LifeSafer transacts business in this district.

## PARTIES

8. Plaintiff is a natural person who at all relevant times resided in the Commonwealth of Missouri, County of Lincoln, and City of Moscow Mills.

9. Plaintiff is a "lessee" as defined by the CLA, 15 U.S.C. § 1667(2).

10. LifeSafer is a Missouri corporation with principal offices in Cincinnati, Ohio.

11. LifeSafer leases its ignition interlock devices to drivers throughout the country through use of "consumer leases" as defined under the CLA, 15 U.S.C. § 1667(1).

12. Thus, LifeSafer is a "lessor" as defined by 15 U.S.C. § 1667(3).

## THE CLA

13. "Passed by Congress as an amendment to the Truth In Lending Act [], the CLA purports 'to assure a meaningful disclosure' of personal property lease terms to 'enable the lessee to compare more readily the various lease terms available to him [and] limit balloon payments in consumer leasing.'" *Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 672 (N.D. Ohio 1996)

(quoting 15 U.S.C. § 1601(b)).

14. The CLA's primary purpose is to:

> "assure a meaningful disclosure of the terms of leases . . . so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become recognized as an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." Id. The CLA thus requires lessors of personal property subject to its provisions to make specified disclosures when a lease is entered into. See 15 U.S.C. § 1667a (consumer lease disclosures).

*Turner*, 180 F.3d at 454.

15. Accordingly, the TILA's "strict liability standard attaches to violations of CLA disclosure requirements as well." *Gaydos*, 941 F. Supp. at 672.

16. Also important, "[t]he TILA reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Layell v. Home Loan & Inv. Bank, F.S.B.*, 244 B.R. 345, 350 (E.D. Va. 1999) (*quoting Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 377 (1973)).

17. And given the CLA's enactment within the same statutory structure, this philosophy applies with equal force to the CLA and Regulation M.

18. To that end, the CLA and Regulation M require that disclosures in a consumer lease be made in a clear and conspicuous manner.

19. Significantly, certain of the disclosures described in Regulation M also must be made in a "segregated" manner:

> The following disclosures shall be segregated from other information and shall contain only directly related information: §§ 1013.4(b) through (f), (g)(2), (h)(3), (i)(1), (j), and (m)(1). The headings, content, and format for the disclosures referred to in this paragraph (a)(2) shall be provided in a manner substantially similar to the applicable model form in appendix A of this part.

12 C.F.R. § 1013.3(a)(2)

20. Those disclosures that must be "segregated from other information" include the following:

> **(b) Amount due at lease signing or delivery.** The total amount to be paid prior to or at consummation or by delivery, if delivery occurs after consummation, using the term "amount due at lease signing or delivery." The lessor shall itemize each component by type and amount, including any refundable security deposit, advance monthly or other periodic payment, and capitalized cost reduction; and in motor vehicle leases, shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments in a format substantially similar to the model forms in appendix A of this part.
>
> (**c**) **Payment schedule and total amount of periodic payments.** The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments.
>
> **(d) Other charges.** The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such charges include the amount of any liability the lease imposes upon the lessee at the end of the lease term; the potential difference between the residual and realized values referred to in paragraph (k) of this section is excluded.
>
> **(e) Total of payments.** The total of payments, with a description such as "the amount you will have paid by the end of the lease." This amount is the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section. In an open-end lease, a description such as "you will owe an additional amount if the actual value of the vehicle is less than the residual value" shall accompany the disclosure.
>
> * * *
>
> **(i) Purchase option.** A statement of whether or not the lessee has the option to purchase the leased property, and:
>
>> **(1) End of lease term.** If at the end of the lease term, the purchase price; and
>
> * * *
>
> **(j) Statement referencing nonsegregated disclosures.** A statement that the lessee should refer to the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default

charges, insurance, and any security interests, if applicable.

\* \* \*

12 C.F.R. § 1013.4.

21. And per 12 C.F.R. §§ 1013.3 and 1013.4, these segregated disclosures must "be provided in a manner substantially similar to the applicable model form in appendix A" of Regulation M.

22. That is, the requisite "segregated" disclosures are required to be given in a manner at least "substantially similar to" the model form attached to the implementing regulations, and attached here as Exhibit A.

23. Among the Board's observations in 1996: "The major revision to this section [of Regulation M] . . . is the requirement to segregate certain disclosures from other information. Clear and conspicuous lease disclosures must be given prior to consummation of a lease on a dated written statement that identifies the lessor and lessee." 61 FR 52246-01, 52249 (Oct. 7, 1996).

24. The Board amended paragraph 3(a)(1) of Regulation M [12 C.F.R. § 1013.3(a)(1)] as follows:

> Former §§ 213.4(a)(1) and 4(a)(2) required that all disclosures be made together on a separate statement or in the lease contract "above the place for the lessee's signature." The Board has deleted this requirement along with the meaningful sequence, same-page, and type-size disclosure requirements, replacing them with the requirement that disclosures be segregated. Most commenters generally supported the proposed segregation requirement, although some commenters opposed the deletion of the other requirements. They believed that the signature requirement ensured that lessors would give disclosures before the consumer becomes obligated on the lease and discouraged lessors from putting important information on the back of a lease document. The Board believes that a segregation requirement and the clear and conspicuous standard provide the same level of protection as the previous rules.
>
> The segregated disclosures and other CLA disclosures must be given to a consumer at the same time. Lessors must continue to ensure that the disclosures are given to

> lessees before the lessee becomes obligated on the lease transaction. For example, by placing disclosures that are included in the lease documents above the lessee's signature, or by including instructions alerting a lessee to read the disclosures prior to signing the lease.
>
> Nonsegregated disclosures need not all be on the same page, but should be presented in a way that does not obscure the relationship of the terms to each other.

*Id.*

25. To that end, the Board also amended paragraph 3(a)(2) [12 C.F.R. § 1013.3(a)(2)] as follows:

> Most commenters—representing both the industry and consumer groups—generally supported some form of segregation of leasing disclosures. **Many commenters believed that consumers would be more likely to read and understand the disclosures if key items were segregated from other disclosures and contract terms.** Pursuant to its authority under section 105(a) of the TILA, **the Board has adopted the requirement that certain consumer leasing disclosures be segregated from other required disclosures and from general contract terms to assure clear, conspicuous, and meaningful disclosure of lease terms.**
>
> Some commenters, including trade groups that represent a large portion of the motor vehicle leasing industry, suggested that the more important disclosures be further highlighted in a manner similar to the Board's Regulation Z. **The Board believes that the segregation requirement and the requirement that disclosures be in a form substantially similar to the applicable model form in appendix A adequately focuses the consumer's attention on key information.**
>
> Lessors may provide the segregated disclosures on a separate document or may include them in their lease contracts, apart from other information. The general content, format, and headings for these disclosures should be substantially similar to those contained in the model forms in appendix A. Lessors may continue to provide the remaining disclosures required by Regulation M and the CLA in a nonsegregated format.
>
> The model forms in Appendix A for open-end leases, closed-end leases, and furniture leases have been revised.

*Id.* (emphasis added).

## FACTUAL ALLEGATIONS

26. On or about May 31, 2018, LifeSafer installed one of its ignition interlock devices in Plaintiff's vehicle.

27. That same day, Plaintiff signed several documents in connection with LifeSafer's Program Service Agreement in which he is the lessee, LifeSafer is the lessor, and LifeSafer's ignition interlock device is the personal property subject to the lease.

28. A copy of the parties' agreement is attached as Exhibit B.

29. Plaintiff leased the ignition interlock device for personal, family or household purposes—namely, for use in his personal vehicle.

30. The lease term began on May 31, 2018 and continued until February 26, 2019. *See* Ex. B at 2; De-Installation Certificate attached as Exhibit C.

31. The lease agreement required Plaintiff to return the ignition interlock device at the end of the term "in the same condition as when [it] was installed, subject only to normal wear and tear." *Id*. at 4.

32. Here, with respect to its May 31, 2018 lease agreement with Plaintiff, LifeSafer made virtually no effort to follow the mandates of the CLA and Regulation M.

33. The lease agreement bundle consists of five interconnected parts: the Ignition Interlock Installation Verification; the Service Invoice; the Program Service Agreement; the accompanying Terms and Conditions; and the Fee Schedule.

34. None of these documents, however, provides Plaintiff the mandatory segregated disclosures required by 12 C.F.R. § 1013.3(a)(2).

35. Nor are the necessary disclosures segregated anywhere within the lease agreement bundle, let alone in a manner "substantially similar to" the applicable model form, *see* Ex. A, to

ensure that such disclosures are as clear and conspicuous as the Board intended.

36. LifeSafer's closest attempt to meet its statutory burdens may be found in the Service Invoice, which identifies Plaintiff, his vehicle, and LifeSafer. *See* Ex. B at 1.

37. The Service Invoice also reflects Plaintiff's initial payment of $70.02 for the ignition interlock device, which is comprised of 30 days of (i) daily monitoring at $2.0380 per day, and (ii) daily loss protection at $0.2959 per day. *Id.*

38. And while the Service Invoice may visually resemble Regulation M's model form in its use of partitioned boxes to separate and organize disparate pieces of information, the resemblance ends there, as this portion of the lease agreement contains virtually none of the substantive disclosures required by the statute and regulations. *Compare* Ex. B at 1 with Ex. A at 1.

39. To be sure, wholly missing from the Service Invoice are necessary disclosures regarding:

- The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments;

- The total amount of other charges payable to Defendants, itemized by type and amount, that are not included in the periodic payments;

- The total of payments, with a description such as "the amount you will have paid by the end of the lease";

- A statement of whether or not Plaintiff has the option to purchase the leased property, and if at the end of the lease term, the purchase price for doing so; and

- A statement that Plaintiff should refer to the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable

40. What's more, the remainder of the lease agreement bundle is similarly opaque.

41. For example, the Fee Schedule lists a dizzying array of one-time and daily fees or charges for various classes of services, including "Procedures," "Monitoring," "Service Calls," "Violations/Penalties," and "Unit Damage/Loss." Ex. B at 3.

42. Even within this Fee Schedule, Defendants fail to provide a clear explanation of:

- The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments;

- The total amount of other charges payable to Defendants, itemized by type and amount, that are not included in the periodic payments; or

- The total of payments, with a description such as "the amount you will have paid by the end of the lease."

*See id.*

43. There is no disclosure anywhere to be found of precisely which amount of money, and for what time period(s), Plaintiff must pay LifeSafer for use of the ignition interlock device he leased.

44. Similarly lacking is an explanation of exactly how much money, in total, Plaintiff will have paid LifeSafer by the end of the lease term.

45. Also missing from the lease agreement bundle is an explanation of whether Plaintiff may eventually purchase the ignition interlock device, and if so, when and at what price.

46. Also missing from the lease agreement bundle is a disclosure regarding the term of the lease.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1667a AND 12 C.F.R. § 1013.4

47. Plaintiff repeats and re-alleges each and every factual allegation contained above.

48. Regulation M demands that certain disclosures be made in a "segregated" manner separate and apart from all other information contained in a consumer lease:

The following disclosures shall be segregated from other information and shall contain only directly related information: §§ 1013.4(b) through (f), (g)(2), (h)(3), (i)(1), (j), and (m)(1). The headings, content, and format for the disclosures referred to in this paragraph (a)(2) shall be provided in a manner substantially similar to the applicable model form in appendix A of this part.

12 C.F.R. § 1013.3(a)(2).

49. Among those disclosures required to be "segregated" in such a manner:

**(b) Amount due at lease signing or delivery.** The total amount to be paid prior to or at consummation or by delivery, if delivery occurs after consummation, using the term "amount due at lease signing or delivery." The lessor shall itemize each component by type and amount, including any refundable security deposit, advance monthly or other periodic payment, and capitalized cost reduction; and in motor vehicle leases, shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments in a format substantially similar to the model forms in appendix A of this part.

(**c) Payment schedule and total amount of periodic payments.** The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments.

**(d) Other charges.** The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such charges include the amount of any liability the lease imposes upon the lessee at the end of the lease term; the potential difference between the residual and realized values referred to in paragraph (k) of this section is excluded.

**(e) Total of payments.** The total of payments, with a description such as "the amount you will have paid by the end of the lease." This amount is the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section. In an open-end lease, a description such as "you will owe an additional amount if the actual value of the vehicle is less than the residual value" shall accompany the disclosure.

* * *

**(i) Purchase option.** A statement of whether or not the lessee has the option to purchase the leased property, and:

>**(1) End of lease term.** If at the end of the lease term, the purchase price; and

* * *

> **(j) Statement referencing nonsegregated disclosures.** A statement that the lessee should refer to the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

* * *

12 C.F.R. § 1013.4.

50. Here, LifeSafer violated 15 U.S.C. § 1667a and 12 C.F.R. § 1013.4 by failing to provide such segregated disclosures, as described above, in the form and manner required by the CLA and Regulation M, prior to the consummation of Plaintiff's lease agreement.

51. To the extent any of the required disclosures may be found scattered throughout the overall lease bundle, LifeSafer fails to meet its burdens under the CLA and Regulation M because those disclosures are not properly segregated from other information, not provided in a manner substantially similar to the applicable model form, and do not contain only directly related information.

52. In short, LifeSafer's lease agreement with Plaintiff is precisely what the CLA and Regulation M were enacted to avoid—a confusing mess of terms that utterly fails to "focus[] the consumer's attention on key information," as the Board intended.

53. And LifeSafer's omissions are significant for, at the time Plaintiff signed the lease agreement, he was confused as to many of its terms, including (i) the total amount of money he owed under the lease; (ii) the exact amount of each periodic payment required by the lease; (iii) whether other charges may be assessed beyond his periodic payments (such as for removal of the device at lease-end); and (iv) whether he had the option to purchase the leased property at the conclusion of the lease (and if so, at what price).

54. Confusion of this magnitude is tantamount to deception on the part of Defendants;

at signing, Plaintiff remained oblivious as to the true costs of the lease. S*ee McQuinn v. Bank of Am., N.A.*, 656 F. App'x 848, 849 (9th Cir. 2016); *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001).

55. In other words, the confusion created by Defendants' lease agreement is exactly the type of harm that the Board sought to address in implementing, and then amending, Regulation M.

56. By virtue of its violations, Defendant is liable to Plaintiff under 15 U.S.C. § 1667d(a), 15 U.S.C. § 1640(a)(1), and 15 U.S.C. § 1640(a)(2)(A)(i) for all actual damages incurred and for statutory damages in the amount of 25% of the total amount of monthly payments due under the lease agreement.

57. The harm suffered by Plaintiff is particularized in that the violative lease agreement was presented to him personally, regarded his personal obligations in connection with the lease of an ignition interlock device, and failed to give him statutorily-mandated disclosures to which he was entitled.

58. Likewise, the CLA's disclosure provisions

> serve[] to protect a consumer's concrete interest in "avoid[ing] the uninformed use of credit," a core object of the TILA. These procedures afford such protection by requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions. A consumer who is not given notice of *his* obligations is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit.

*Strubel v. Comenity Bank*, 842 F.3d 181, 190-91 (2d Cir. 2016) (emphasis in original).

59. No matter, that risk of real harm materialized here, as Plaintiff was unaware of the true costs associated with his lease of the ignition interlock device as a result of Defendants'

inadequate disclosures.

60. Had Plaintiff known of the true costs involved, he may have pursued other alternatives for the ignition interlock device he desired.

61. Further, the risk of real harm materialized in that Plaintiff paid LifeSafer over several months pursuant to the lease agreement

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that LifeSafer violated 15 U.S.C. § 1667a and 12 C.F.R. § 1013.4 for its failure to provide Plaintiff the requisite segregated disclosures concerning his lease of Defendants' ignition interlock device;

b) Awarding Plaintiff actual damages pursuant to 15 U.S.C. § 1667d(a) and 15 U.S.C. § 1640(a)(1), and/or statutory damages pursuant to 15 U.S.C. § 1667d(a) and 15 U.S.C. § 1640(a)(2)(B);

c) Awarding Plaintiff his reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1640(a)(3) and Rule 23 of the Federal Rules of Civil Procedure;

d) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

e) Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

62. Plaintiff is entitled to and hereby demands a trial by jury.

Respectfully submitted,

/s/ Anthony LaCroix
Anthony LaCroix

LaCroix Law Firm, LLC
MO Bar No.60793
1600 Genessee, Ste. 956
Kansas City, MO 64102
(816) 399-4380
tony@lacroixlawkc.com
*Lead Counsel for Plaintiff*

*Co-counsel with:*
*Thompson Consumer Law Group, PC*

**Correspondence Address:**

Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206